IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SALIM QAZIZADEH, ) | |
| ) | |
| Plaintiff, ) | C.A. No. 14-2037 |
| ) | |
| v. ) | |
| ) | |
| PINNACLE HEALTH SYSTEM, ) | |
| PINNACLE HEALTH MEDICAL ) | |
| SERVICES. ) | |
| ) | JURY TRIAL DEMANDED |
| Defendant. ) | |

## THIRD AMENDED COMPLAINT IN CIVIL ACTION

### I. INTRODUCTION

1) This complaint alleges that Defendants Pinnacle Health System and Pinnacle Health Medical Services, unlawfully and discriminatorily breached its employment agreement with Plaintiff, Dr. Salim Qazizadeh. Plaintiff alleges that he was discriminated against on the basis of race (Persian), religion (Islam) and national origin (Iran).

### II. JURISDICTION

2) The jurisdiction of this court is invoked pursuant to 28 U.S.C. §451, 1331, 1332, 1343 and upon the doctrine of pendent and/or supplemental jurisdiction over any state law claims.

### III. PARTIES

3) Salim Qazizadeh is an adult resident of Chesapeake, Virginia. He is a native of Iran, he is a follower of Islam and is of Persian descent.

4) Defendant Pinnacle Health System is a non-profit corporation licensed and authorized to conduct business in the Commonwealth of Pennsylvania, with a primary place of business located at 409 South Second Street, Harrisburg, PA 17105.

5) Defendant Pinnacle Health Medical Services is a non-profit corporation licensed and authorized to conduct business in the Commonwealth of Pennsylvania, with a primary place of business located at 409 South Second Street, Harrisburg, PA 17105.

**IV. FACTS**

6) Dr. Qazizadeh is a board certified neurologist who, at all times relevant, was licensed to practice medicine within the Commonwealth of Pennsylvania.

7) Dr. Qazizadeh was employed by Pinnacle from July 2006 through January 2012, at which time he joined a private neurologic practice.

8) On January 21, 2013, due to Pinnacle's offer of a better contract, Dr. Qazizadeh resigned from the neurologic practice and entered into a new two-year employment contract (hereinafter "Contract") with Pinnacle. (A copy of the Contract is attached as Exhibit 1, and made a part hereof).

9) The Contract provided for a term of employment from February 5, 2013 through February 4, 2015.

10) Dr. Qazizadeh resigned from the private neurological practice in reliance upon the terms of the Contract.

11) The Contract provided that either party could terminate the Contract upon 180 days prior written notice. See Exhibit 1 at ¶14(d). Pinnacle could elect to terminate

Dr. Qazizadeh's employment during the notice period, but was obligated to continue his salary and benefits for the entire notice period. Id.

12) The Contract terminated immediately upon the occurrence of certain specific events, including Dr. Qazizadeh's conviction of a misdemeanor or felony. Ex. 1 at ¶14(b)(1).

13) No clause of the Contract provided that it could be terminated, either automatically or at Pinnacle's election, if Dr. Qazizadeh was charged with a crime, but not convicted.

14) The Contract did not authorize or permit Pinnacle to suspend Dr. Qazizadeh's employment without pay.

15) On or about February 14, 2013, Dr. Qazizadeh was arrested and charged with misdemeanor offenses arising from a domestic dispute.

16) The incident underlying these charges did not occur on or near hospital property and did not impair Dr. Qazizadeh's ability to perform his duties with Pinnacle.

17) On February 15, 2013 Pinnacle informed Dr. Qazizadeh that due to the charges filed against him, he was, as of that date, suspended without pay.

18) Prior to suspending Dr. Qazizadeh from his employment, Pinnacle did not conduct any investigation to determine the underlying facts or the merits of the criminal charges filed against him.

19) Prior to suspending Dr. Qazizadeh from his employment, Pinnacle did not contact Dr. Qazizadeh to determine his version of the events that led to the filing of criminal charges against him.

20) At the April 17, 2013 preliminary hearing all of the charges against Dr. Qazizadeh were dismissed. The charges were subsequently expunged.

21) A representative of Pinnacle was present at the preliminary hearing and was aware that the charges were dismissed.

22) At all times relevant, Dr. Qazizadeh requested that Pinnacle adhere to the terms of the Contract and immediately reinstate him to his employment with Pinnacle.

23) Pinnacle informed Dr. Qazizadeh several times that it intended to reinstate him, but such reinstatement never occurred.

24) In a September 4, 2013 correspondence Pinnacle informed Dr. Qazizadeh of its unilateral position that he "no longer" had "an employment contract with Pinnacle." Instead, Pinnacle insisted that Dr. Qazizadeh sign a new three month employment agreement, the terms of which were, in comparison to the Contract, substantially less favorable to him.

25) Dr. Qazizadeh did not sign the proffered employment agreement because the Contract was still in full force and effect and the terms of the proffered employment agreement were in breach of the Contract.

26) Pinnacle employed a neurologist who was Caucasian and Christian, who had previously been convicted of drug and alcohol related crimes and whose license to practice medicine in the Commonwealth of Pennsylvania was placed on probation.

27) Significant restrictions were imposed on this neurologist's ability to practice medicine in the Commonwealth of Pennsylvania, including, *inter alia*, that he was prohibited from prescribing controlled substances and/or medications, he could not supervise nurse practitioners and physician's assistants and could not teach or supervise medical students and/or residents.

28) This neurologist also had numerous patient and staff complaints lodged against him during his employment with Pinnacle.

29) Pinnacle continued to employ this neurologist for several years, terminating his employment only after he was convicted of another drug and alcohol related crime and his medical license was revoked by the Pennsylvania Board of Medicine, rendering him unable to practice medicine in any capacity.

30) Dr. Qazizadeh has never been subject to any disciplinary action either by the Pennsylvania Board of Medicine or by any employer.

31) Dr. Qazizadeh's license to practice medicine has never been revoked, restricted, or placed on probation.

32) Dr. Qazizadeh has never had a patient complaint lodged against him.

33) Dr. Qazizadeh was suspended and later terminated from his employment with Pinnacle in direct breach of the Contract because of his race and/or national origin.

34) As a result of the Defendant's conduct, as hereinbefore described, the Plaintiff has suffered lost wages, benefits and other remuneration.

35) As a result of Defendant's conduct, as hereinbefore described, the Plaintiff has suffered embarrassment, humiliation, and emotional distress.

36) Defendant's conduct as hereinbefore described, was willful, outrageous, and/or performed in reckless disregard of the Plaintiff's rights as guaranteed by 42 U.S.C. §1981, entitling the Plaintiff to the recovery of punitive damages against the Defendant.

37) Prior to fling this lawsuit, Dr. Qazizadeh exhausted all necessary administrative procedures by filing appropriate charges with the Pennsylvania Human Relations Commission (PHRC) and/or Equal Employment Opportunity Commission (EEOC).  A copy of the charge of discrimination filed on behalf of Dr. Qazizadeh is attached hereto as Exhibit 2 and made a part hereof.

38) Dr. Qazizadeh has received a "right to sue" notification from the Equal Employment Opportunity Commission with regard to his Title VII gender discrimination charge. A copy of this letter is attached hereto as Exhibit 3 and made a part hereof.

Dr. Qazizadeh's PHRC case has been dismissed.   A copy of the notice of dismissal has been attached hereto as Exhibit 4.

## COUNT I
(BREACH OF CONTRACT)

39) Plaintiff incorporates by reference the allegations of the preceding paragraphs as if set forth herein.

40) The Defendant and Dr. Qazizadeh entered into a valid and enforceable Contract on January 21, 2013.

41) The Defendant breached its duties under the Contract by, *inter alia*:

   a. Suspending Dr. Qazizadeh's employment without pay in violation of the express terms of the Contract;

   b. Terminating Dr. Qazizadeh's employment without providing notice in violation of the express terms of the Contract.

## COUNT II
### (RACIAL/NATIONAL ORIGIN DISCRIMINATION UNDER 42 USC §1981)

42) Plaintiff incorporates by reference the allegations of the preceding paragraphs as if set forth herein.

43) Defendant's conduct, as hereinbefore described, violated Plaintiff's right to be free from racial and/or national origin discrimination in the formation and enforcement of contracts as protected by 42 U.S.C. §1981.

## COUNT III
### (RACIAL/NATIONAL ORIGIN/RELIGION DISCRIMINATION UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT 43 P.S. § 951-963)

44) Plaintiff incorporates by reference the allegations of the preceding paragraphs as if set forth herein.

45) Defendant's conduct, as hereinbefore described, violated Plaintiff's right to be free from racial and/or national origin and/or religious discrimination in the terms and conditions of employment in violation of 43 P.S. § 951-963.

## COUNT IV

(RACIAL/NATIONAL ORIGIN/RELIGION DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1967, AS AMENDED, 42 U.SC. §2000(e), *et. seq*)

46) Plaintiff incorporates by reference the allegations of the preceding paragraphs as if set forth herein.

47) Defendant's conduct, as hereinbefore described, violated Plaintiff's right to be free from racial and/or national origin and/or religious discrimination in the terms and conditions of employment in violation of 43 P.S. § 951-963.

## COUNT IV

(PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW, 43 P. S. §260.1 *et seq.*)

48) Plaintiff incorporates by reference the allegations of the preceding paragraphs as if set forth herein.

49) Defendant's conduct, as set forth herein, violated Plaintiff's right to payment of wages and compensation to which he is entitled pursuant to the terms of an agreement, as guaranteed by the Pennsylvania Wage Payment and Collection Law, 43 P.S. §620.1 et seq.

## WILLFUL, OUTRAGEOUS AND/OR RECKLESS CONDUCT

50) Defendant's conduct as hereinbefore described was willful, outrageous, and/or performed in reckless disregard of the plaintiff's rights under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1967, as amended, and the Pennsylvania Human Relations Act, entitling the plaintiff to the recovery of punitive and/or liquidated damages against the defendant.

WHEREFORE, the Plaintiff requests that this Honorable Court enter judgment in his favor for compensatory and/or punitive damages and to award him such other relief as is appropriate and equitable under the circumstances and to award him costs and attorney's fees incident to the successful completion of this litigation.

Respectfully submitted:

/s/ Margaret Schuetz Coleman
Margaret Schuetz Coleman, Esquire
PA I. D. #200975
Law Office of Timothy P. O'Brien
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA  15219
(412) 232-4400

Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Plaintiff's Third Amended Complaint in Civil Action directed to defendant was served upon the following counsel of record via electronic mail, this 12th day of November, 2015:

>Richard C. Seneca, Esquire
>Seneca Law
>P.O. Box 333
>Lewisberry, PA  17339-0333

>s/ Margaret Coleman
>Margaret S. Coleman, Esquire