UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SALIM QAZIZADEH,<br>　　　　Plaintiff | :<br>:<br>: |
| v. | : CASE NO. 1:14-CV-2037<br>: |
| PINNACLE HEALTH SYSTEM and<br>PINNACLE HEALTH MEDICAL<br>SERVICES,<br>　　　　Defendants | :<br>:<br>:<br>:<br>: |

*M E M O R A N D U M*

*I.　　　Introduction*

Presently before the court are the parties' cross-motions for reconsideration. Plaintiff Salim Qazizadeh ("Plaintiff") moves for reconsideration of the portion of this court's July 11, 2016 order, (Doc. 54), and accompanying memorandum, (Doc. 55), denying him partial summary judgment. (See Doc. 59). Defendants Pinnacle Health System and Pinnacle Health Medical Services ("Defendants") move this court to reconsider the portion of the same order and memorandum where partial summary judgment was granted to Plaintiff. (See Doc. 57). For the reasons discussed below, the court will deny Defendants' motion for reconsideration and grant Plaintiff's motion for reconsideration.

*II.　　　Background*

The court thoroughly set forth this case's complicated factual and procedural history in its July 11, 2016 memorandum, (Doc. 55 at 1-13), and thus will not repeat itself

here. When Plaintiff moved for summary judgment on March 31, 2016, the only remaining claims in the litigation were breach of contract and violation of Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 PA. STAT. AND CONS. STAT. ANN. §§ 260.1-260.45. (See Doc. 35; Doc. 55 at 1-2). On July 11, 2016, the court granted partial summary judgment in Plaintiff's favor. (Doc. 54). The court granted summary judgment with respect to Plaintiff's breach of contract claim regarding his suspension without pay, but denied Plaintiff's motion in all other respects. (Id.)

Neither party was enchanted with the court's decision, and accordingly filed cross-motions for reconsideration. (Docs. 57, 59). Both motions have been extensively briefed and are ripe for consideration.

III.     *Discussion*

    A.  Standard of Review

Defendants ask the court to reconsider the portion of its July 11, 2016 order granting Plaintiff partial summary judgment; Plaintiff seeks reconsideration of the portion of the order denying partial summary judgment. Both sides take pains to distinguish what piece of the order they want the court to reconsider, attempting to garner a more favorable standard of review. At base, however, each litigant simply requests reconsideration of a single interlocutory order granting partial summary judgment.

The legal standard regarding motions for reconsideration of orders granting partial summary judgment is not entirely cohesive within the district courts. Compare York Int'l Corp. v. Liberty Mut. Ins. Co., 140 F. Supp. 3d 357 (M.D. Pa. 2015) (treating motion for reconsideration of grant of partial summary judgment as motion to alter or amend under FED. R. CIV. P. 59(e) and applying stringent standard requiring change in controlling

law, new evidence not previously available, or "the need to correct a clear error of law or fact or to prevent manifest injustice") (citation omitted) and Peerless Ins. Co. v. Pa. Cyber Charter Sch., 19 F. Supp. 3d 635 (W.D. Pa. 2014) (accord), with St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co., 472 F. Supp. 2d 630 (M.D. Pa. 2007) (treating motion for reconsideration of grant of partial summary judgment as review of an interlocutory order under FED. R. CIV. P. 54(b) and applying standard of permitting reconsideration whenever "consonant with justice to do so") (quoting United States v. Jerry, 487 F.2d 600, 605 (3d Cir. 1973)).  Confusingly, some district courts have invoked the "when-consonant-with-justice" standard when deciding a motion for reconsideration of an interlocutory order under Federal Rule of Civil Procedure 54(b), only to apply the more stringent requirements of cases involving reconsideration of final orders.  See, e.g., Am. Guarantee & Liab. Ins. Co. v. Fojanini, 99 F. Supp. 2d 558, 560-61 (E.D. Pa. 2000); Dayoub v. Penn-Del Directory Co., 90 F. Supp. 2d 636, 637 (E.D. Pa. 2000).

      The court reaffirms the better-reasoned view that motions for reconsideration of interlocutory orders—whether denials of summary judgment, grants of partial summary judgment, or any other non-final orders—are motions under Federal Rule of Civil Procedure 54(b).  Therefore, reconsideration of such orders may be had even if the movant cannot show an intervening change in controlling law, the availability of new evidence that was not available when the court issued the underlying order, or "the need to correct a clear error of law or fact or to prevent manifest injustice."  See Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (enumerating grounds for reconsideration of final order) (citation omitted).  Instead, the court may permit

reconsideration whenever "consonant with justice to do so." St. Mary's Area Water Auth., 472 F. Supp. 2d at 632 (quoting Jerry, 487 F.2d at 605).

That being said, the court is also acutely aware of the need for finality of judgments and preservation of judicial resources. Before entertaining a motion for reconsideration of an interlocutory order, the movant must still establish good cause for why the court should revisit its prior decision. See Confer v. Custom Eng'g Co. Emp. Health Benefit Plan, 760 F. Supp. 75, 77 (W.D. Pa. 1991). Moreover, whether involving a final or interlocutory order, a motion for reconsideration is "not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) (citation omitted). A reconsideration motion should not be used to try to get a "second bite at the apple," Kropa v. Cabot Oil & Gas Corp., 716 F. Supp. 2d 375, 378 (M.D. Pa. 2010), or to raise new arguments or evidence that could have been proffered prior to the issuance of the order in question, McDowell Oil Serv., Inc. v. Interstate Fire & Cas. Co., 817 F. Supp. 538, 541 (M.D. Pa. 1993).

B. The Cross-Motions for Reconsideration

With the above standard in mind, the court turns to the litigants' respective motions for reconsideration.[1] The court will address each motion in turn.

*1. Defendants' Motion for Reconsideration*

Defendants assert that this court, in its summary judgment decision, "misapprehended" both the definition of the word "comply" in Plaintiff's 2013 Physician

---

[1] The court is cognizant that because the instant cross-motions for reconsideration concern a summary judgment decision, Federal Rule of Civil Procedure 56 and its standard of review continue to control the substantive analysis. See Erdman v. Nationwide Ins. Co., 621 F. Supp. 2d 230, 233-34 (M.D. Pa. 2007), aff'd, 582 F.3d 500 (3d Cir. 2009).

Employment Agreement ("PEA") and the application of contract interpretation principles. (Doc. 58 at 3). Defendants submit two arguments for why this is so: (1) the court relied on too narrow a definition of "comply," (Id. at 4, 7), and (2) the word "comply"—with its numerous possible definitions—creates a latent ambiguity in the contract, (Id. at 8-9).

Notably, Defendants raised neither argument in opposition to Plaintiff's motion for summary judgment, even though Plaintiff relied on similar "misapprehensions" in his supporting brief. (See Doc. 36 at 8-12). A motion for reconsideration is not a vehicle to raise new arguments that could have been raised before the issuance of the order in question. McDowell Oil, 817 F. Supp. at 541. Defendants should have raised these arguments in their opposition to Plaintiff's motion for summary judgment. Nevertheless, the court will briefly discuss why it finds neither argument availing.

Defendants first complain that the court erroneously adopted too narrow of a meaning of the word "comply" as it appears in paragraph 4 of the PEA, (Doc. 38-3 at 2), by limiting its reach to those Human Resources provisions that Plaintiff could affirmatively act in accordance with or abide by. Defendants contend that because, in some dictionary entries, comply can also mean "[to] yield; to accommodate; *or to adapt oneself to,*" (Doc. 58 at 7), it follows that the contested phrase "[p]hysician shall also comply with all of [Pinnacle Health System ("PHS")]'s Human Resources Policies and Procedures" provides for the wholesale incorporation by reference of every one of PHS's HR policies and procedures into Plaintiff's individual employment contract. The court finds this contention untenable.

First, as the court explained in its summary judgment memorandum, long-established contract law provides that incorporation by reference to an extraneous

5

document should be applied narrowly.  See Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp., 324 F. Supp. 2d 731, 750 (W.D. Pa. 2004) ("[W]here incorporated matter is referred to for a specific purpose only, it becomes a part of the contract for such purpose only, and should be treated as irrelevant for all other purposes.") (quoting 11 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 30:25 (4th ed. 2003)); Guerini Stone Co. v. P.J. Carlin Constr. Co., 240 U.S. 264, 277 (1916) ("In our opinion the true rule, based upon sound reason and supported by the greater weight of authority, is that in the case of . . . a reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified.") (citations omitted).  Consequently, "shall also comply" does indeed incorporate by reference some standards with which Plaintiff must affirmatively act or abide by.  But contrary to Defendants' assertion, it does not provide for the wholesale incorporation of every policy and procedure of PHS into Plaintiff's personal employment contract.

    Second, interpreting "comply" in the manner Defendants suggest would create the absurd result of a highly skilled, specialist physician—who has signed an individualized contract that purports to represent the entirety of his employment agreement—being contractually bound to the same policies and procedures as any other at-will employee of PHS.  Presumably, there is much contained in PHS's policies and procedures that applies to at-will employees that cannot apply to specialist physicians with employment contracts, because those contracts define and control many of the conditions of employment.  As just one example, physicians such as Plaintiff have specific

6

contractual rights that control when and how termination can occur, as opposed to being terminable at will. (See Doc. 38-3 at 4-5, ¶ 14 of Plaintiff's 2013 PEA).

Declining wholesale incorporation becomes even easier by comparing Plaintiff's 2011 PEA (Doc. 53-3) with Plaintiff's 2013 PEA (Doc. 38-3). In the 2011 PEA, paragraph 4 provides that if the employment contract and PHS's other policies and procedures conflict, the employment contract controls. (Doc. 53-3 at 2). This conflict clause is noticeably absent in paragraph 4 of the 2013 PEA. (Doc. 38-3 at 2). Thus, the language of the 2013 PEA is much less likely to convey the intent that the contract incorporates by reference every policy and procedure of PHS, because it provides no explanation of how to handle any conflict that may arise between the contract's terms and PHS's general policies and procedures.

Finally, the court emphasizes that as the drafter of the 2013 PEA, Defendants had ample opportunity to insert a provision that would explicitly allow Defendants to suspend Plaintiff without pay if criminal charges were filed. Defendants, in fact, had already modified Plaintiff's 2013 PEA by adding a specific provision that allowed PHS to terminate the agreement if Plaintiff canceled appointments without permission and proper cause. (See Deposition of Attorney John DeLorenzo, Doc. 47-3 at 22, Dep. 79:12-80:2 (discussing how clause 14(c)(4) of Plaintiff's 2013 PEA was inserted specifically for Plaintiff due to his "past behavior"). Defendants just as easily could have modified the 2013 PEA to include a provision for suspension without pay, but they did not.

Defendants next argue that even if "comply" does not have the "plain meaning" they propose, a latent ambiguity exists in the contract and should be decided by a jury. The court disagrees.

7

First, in its summary judgment memorandum, the court found no ambiguity—patent or latent—in the word "comply" as used in paragraph 4 of Plaintiff's 2013 PEA. (See Doc. 55 at 17-18). A motion for reconsideration is "not to be used as . . . an attempt to relitigate a point of disagreement between the Court and the litigant." Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) (citation omitted). The court does not waiver from its initial finding that the meaning of "comply" in paragraph 4 is clear and unambiguous, and will not relitigate this issue.

Even if the court were to accept the extrinsic evidence of Defendants' alternative interpretation of paragraph 4, the result would not change. This is because "the proffered interpretation cannot contradict the common understanding of the disputed term or phrase when there is another term that the parties could easily have used to convey this contradictory meaning." Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 94-95 (3d Cir. 2001) (applying Pennsylvania law); see also Meyer v. CUNA Mut. Ins. Soc'y, 648 F.3d 154, 165 (3d Cir. 2011) (applying Pennsylvania law and explaining that courts may consider "whether alternative or more precise language, if used, would have put the matter beyond reasonable question") (citation omitted).

There are many alternative phrases that Defendants could have used to more clearly convey the interpretation for which they now advocate. For example, the PEA could have stated that Plaintiff shall "be subject to" all PHS policies and procedures, or that the PEA "incorporates by reference" all PHS policies and procedures that do not conflict with the explicit terms of the PEA. Defendants themselves provide another much clearer alternative in their supporting brief when they claim that "comply" means Plaintiff "*was bound by* the entire Human Resources policy." (Doc. 58 at 4) (emphasis added).

8

The court will not manufacture an ambiguity from Defendants' extrinsic evidence of less common definitions of "comply" when alternative or more precise language would have "put the matter beyond reasonable question." Meyer, 648 F.3d at 165.

### 2. *Plaintiff's Motion for Reconsideration*

Plaintiff's motion for reconsideration carries more weight. First, Plaintiff bases his motion on purported factual errors contained in the court's summary judgment memorandum. An alleged clear error of fact, which meets the stringent requirements for reconsideration of final orders, Max's Seafood Café, 176 F.3d at 677, logically meets the lesser threshold for reconsideration of interlocutory orders.

Plaintiff takes issue with the court's determination that there exists a genuine issue of material fact concerning whether Plaintiff was terminated for cause. In the court's summary judgment opinion, it found that a question of fact existed as to whether Plaintiff was terminated for cause since he did miss one day of work when he was arrested in February of 2013. (Doc. 55 at 20). The court relied on evidence of Dr. Bleicher's interaction with Plaintiff during a June 28, 2013 meeting and Plaintiff's history of domestic problems that caused him to miss work in 2011, and found that "a jury could reasonably infer that Bleicher was aware of Plaintiff's prior dealings with Defendants and the reason behind . . . his absence in February 2013, resulting in a decision to terminate Plaintiff's employment 'for cause' and without the necessity to make severance payments to him." (Id. at 21).

Plaintiff contends the court erred in its factual conclusions because those conclusions contradict the Defendants' sworn admissions, Dr. Bleicher's own testimony fails to support a termination for cause, and the only evidence presented to controvert Dr.

9

Bleicher's testimony and Defendants' admissions is inadmissible hearsay.  (Doc. 60 at 2-3).  For the following reasons, Plaintiff's argument is well taken.

Under the 2013 PEA, termination of the agreement could occur in four ways. Termination could occur by mutual agreement of the parties (¶ 14(a)); immediately upon the occurrence of a serious event such as conviction of certain crimes, loss of medical license, or death (¶ 14(b)); "for cause" through the exercise of PHS's sole discretion (¶ 14(c)); or "without cause" by either party providing 180-days' prior written notice of termination (¶ 14(d)).  (Doc. 38-3 at 4-5).  If termination were without cause under paragraph 14(d), and Plaintiff's services were ended prior to the conclusion of the 180-day notice period, severance pay would be required.  (Id. at 5).

As the court previously noted, it is undisputed that Plaintiff was not terminated under paragraph 14(a) or 14(b).  (Doc. 55 at 21).  Thus, for Plaintiff's agreement to have been properly terminated without notice and without severance pay, the reason for termination must have fallen under paragraph 14(c), subsections (1)-(5), and PHS must have exercised its discretion to terminate for such reason.  (Id.)  As the 2013 PEA is written, and as the court explained in its previous memorandum, it is unclear whether notice and an opportunity to cure are required for termination under each of the for-cause subsections, or only under for-cause subsection (5).  (Id. at 22-23; Doc. 38-3 at 5).

Even interpreting the ambiguity in Defendants' favor and assuming, without deciding, that providing written notice and an opportunity to cure only applies to subsection (5),[2] upon reconsideration of the entire record, the court finds that Defendants have failed to meet their burden in opposition to summary judgment on the issue of breach

---

[2] It is undisputed that written notice and an opportunity to cure were not given to Plaintiff.

10

of contract due to termination without notice and without severance pay.  That is, Defendants have failed to point to any admissible evidence that would rebut Plaintiff's claim that his termination without notice and without severance pay—before the end of the 2013 PEA's two-year term—was a breach of contract.

### a. Termination for Cause

The issue of termination for cause requires a preliminary discussion, because it is strangely unclear when Plaintiff was officially terminated from his most recent employment with PHS.  In Defendants' answers to Plaintiff's first set of interrogatories, Defendants point to a September 4, 2013 letter from Attorney John DeLorenzo (in-house counsel for PHS), which stated, "As you know, you do not have an employment arrangement with Pinnacle Health."  (Doc. 38-12 at 4-5).  Defendants further alleged in the interrogatories that "[i]t was discussed and understood by and between the parties at the June 28, 2013, meeting between Plaintiff and Defendants that Plaintiff's employment arrangement with Defendants had ended."  (Id. at 5).

Oddly, in the same set of interrogatories, when asked, "Please state the basis for the decision to terminate [Plaintiff]'s employment," Defendants responded, "Plaintiff did not respond to the September 4, 2013, letter from John DeLorenzo, Esquire." (Id. at 6-7).  This September 4 letter from DeLorenzo, however, stated that Plaintiff's employment had already been terminated, to wit, "currently you do not have an employment arrangement with Pinnacle Health."  (See Doc. 47-5 at 14).  The letter then offered Plaintiff a new short-term contract as his only means of becoming an employee again.  (Id.)  Adding to the confusion are Defendants' own personnel records, which state that Plaintiff's termination was "voluntary" and effective October 15, 2013.  (Doc. 53-1).

11

These cryptic and seemingly contradictory statements stand in stark contrast to the certified letter Defendants sent to Plaintiff when they terminated his 2011 employment contract. (See Doc. 47-2 at 16). The letter expressly stated, "In accordance with section 12.d. of your Physician Employment Agreement, this letter is to inform you that [PHS] herewith terminates the Agreement and your employment with Pinnacle Health effective ninety (90) days from the date of this letter. Your last day of employment . . . is February 12, 2012." (Id.)

Contrary to this unambiguous termination letter, and after a searching review of Defendants' numerous pleadings and filings, there does not appear to be one affirmative claim advanced, or position taken, by Defendants regarding exactly when Plaintiff's 2013 PEA was terminated, if that termination was "for cause," or who made the termination decision. See, eg., Defs.' Br. in Opp'n to Pl.'s Mot. for Summ. J., Doc. 46 at 25, 26 ("*a jury would reasonably find* that when Plaintiff attended the June 28, 2013, meeting *he was informed that* his contract was terminated . . . *A jury would reasonably find* that Plaintiff knew the contract *had been terminated* because he informed the district attorney in September 2013 that he lost his job") (emphasis added); Defs.' Br. in Opp'n to Pl.'s Mot. for Summ. J., Doc. 46 at 14 ("*Attorney DeLorenzo testified* that at the [June 28, 2013] meeting *it was made very clear that* Plaintiff's contract had been terminated") (emphasis added); Defs.' Answers to Pl.'s First Set of Interrogs., Doc. 38-12 at 6 ("*It was discussed and understood by and between the parties* at the June 28, 2013, meeting between Plaintiff and Defendants that Plaintiff's employment arrangement with Defendants *had ended*") (emphasis added); Defs.' Br. in Opp'n to Pl.'s Mot. for Recons.,

12

Doc. 65 at 16 (explaining that *Plaintiff admitted* in a September 16, 2013 letter to the district attorney that he had lost his job, thus proving his termination).

Time and again Defendants craftily maneuver around the issue of termination for cause—often by utilizing the passive voice—thereby avoiding any sort of outright claim regarding the details of Plaintiff's termination.  At no time do Defendants specifically assert that Plaintiff was terminated for cause, nor identify who terminated Plaintiff, nor explain exactly why he was terminated.

Perhaps Defendants dodge any affirmative statements concerning a possible for-cause termination because to do otherwise would directly contradict their previous positions and sworn statements.  In Defendants' answers to Plaintiff's first set of interrogatories, when asked what the basis was for the decision to end Plaintiff's suspension (i.e., terminate him, as it is undisputed that Plaintiff's suspension was never lifted), Defendants responded, "Plaintiff's suspension did not end as Defendants were unable to make and maintain contact with Plaintiff in an attempt to re-establish Plaintiff's employment."  (Doc. 38-12 at 4-5).  Defendants repeated this assertion verbatim in the following answer, and provided dates that Defendants allegedly attempted to contact Plaintiff to "re-establish employment" during the suspension, dates which span from June 2013 to September 2013—well after the June 28, 2013 meeting in which Defendants now allege "it was made very clear that Plaintiff's contract had been terminated."  (Id. at 5).

Finally, in Defendants' July 11, 2014 formal response to the Pennsylvania Human Relations Commission regarding the now-dismissed discrimination charges, Defendants maintained, "Action was not taken against [Plaintiff].  Rather, [Plaintiff] failed to return to work."  (Doc. 38-22 at 2).  The response continues, "[A] conference was held

13

with [Plaintiff] and Pinnacle Health representatives on June 28, 2013, during which [Plaintiff] was offered continued employment with Pinnacle Health." (Id.)  Finally, it states, "The [Plaintiff] was not disciplined but failed to return to his position."  (Id. at 3).

Defendants—no doubt cognizant of these previous statements—never directly assert that Plaintiff was terminated for cause, who terminated Plaintiff, nor for what specific reason he was terminated.  Instead, they artfully phrase their filings to infer that Plaintiff could have been terminated for cause without affirmatively claiming that Plaintiff was terminated for cause, lest they assert inconsistent positions or undermine their own previous admissions.  See Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 272 (3d Cir. 2012) ("Judicial estoppel . . . seeks to prevent a litigant from asserting a position inconsistent with one that he has previously asserted in the same or in a previous proceeding.  The doctrine exists to protect the integrity of the judicial process and to prohibit parties from deliberately changing positions according to the exigencies of the moment.") (citations and internal quotation marks omitted).

Finally, even if Defendants could affirmatively assert that Plaintiff was terminated for cause through the exercise of PHS's discretion without running afoul of their previous sworn statements, they still must point to some admissible evidence to support such a claim in order to rebut Plaintiff's motion for summary judgment on the termination issue.  See FED. R. CIV. P. 56(c)(1); see also Lexington Ins. Co. v. W. Pa. Hosp., 423 F.3d 318, 333 (3d Cir. 2005) (explaining that "[s]peculation does not create a *genuine* issue of fact; it creates a false issue, the demolition of which is a primary goal of summary judgment") (quoting Hedberg v. Ind. Bell Tel. Co., 47 F.3d 928, 932 (7th Cir. 1995)); Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009)

14

("speculation and conjecture may not defeat a motion for summary judgment") (citing Lexington Ins. Co., 423 F.3d at 332-33). Upon reconsideration, Defendants have not carried their burden.

After extensive depositions of multiple PHS administrators and supervisors, interrogatories, requests for production of documents, and a plethora of other discovery, the only evidence Defendants can muster concerning for-cause termination is hearsay from PHS's in-house counsel, Attorney John DeLorenzo. In his deposition, Attorney DeLorenzo, discussing the June 28, 2013 meeting, stated that "it was made very clear that [Plaintiff's] contract had been terminated." (Doc. 47-3 at 18, DeLorenzo Dep. 62:9-10). When asked who communicated this information to Plaintiff, DeLorenzo responded, "I believe it was Dr. Bleicher. I did not say five words at that meeting." (Id., DeLorenzo Dep. 62:17-21).

First, as Plaintiff correctly points out, the statements DeLorenzo attributes to Dr. Bleicher are hearsay, for which Defendants have proffered no exception. They are out-of-court statements offered for the truth of the matter asserted therein, i.e., that Dr. Bleicher communicated to Plaintiff in the June 28, 2013 meeting that Plaintiff's 2013 PEA had been terminated. See FED. R. EVID. 801(c). As such, they are inadmissible unless permitted by statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. FED. R. EVID. 802. No such exception appears to apply, and Defendants have pointed to none.

Second, when Dr. Bleicher was deposed, he was directly questioned about the June 28, 2013 meeting. None of his answers indicate that he, nor anyone else,

terminated Plaintiff for cause or conveyed that Plaintiff's 2013 PEA was officially terminated:

> Plaintiff's Counsel: [A]t any time during the course of your employment at Pinnacle, did you ever come to a conclusion that [Plaintiff] should be – [Plaintiff]'s employment should be terminated for cause as set forth in [the 2013 PEA]?
>
> Dr. Bleicher: I was not a party to any discussions regarding that.
>
> Plaintiff's Counsel: And – and you did not – and you were never a decision maker where the decision was that [Plaintiff]'s employment should be terminated for cause for one of the reasons enumerated in this agreement that would permit Pinnacle to terminate his employment for cause, is that correct?
>
> Dr. Bleicher: Correct.
>
> Plaintiff's Counsel: Whether you ever made that decision did you ever communicate to someone that it was your opinion, whether you were the decision maker or not, that [Plaintiff]'s employment should be terminated because of having had grounds to terminate him for cause?
>
> Dr. Bleicher: Not – not that I recall.
>
> . . . .
>
> Plaintiff's Counsel: Any termination of [Plaintiff]'s employment was not the result of anything you did, is that correct?
>
> Dr. Bleicher: That is correct.
>
> . . . .
>
> Plaintiff's counsel: There was never any discussion that you can recall in that [June 28, 2013] meeting where you said to [Plaintiff] I have terminated your prior agreement?
>
> Dr. Bleicher: No.
>
> Plaintiff's counsel: There was never any discussion in that [June 28, 2013] meeting where you said to [Plaintiff] I have terminated your agreement for cause and here are the reasons for cause that the termination has been made?

16

>             Dr. Bleicher:  No.

(Doc. 47-4 at 8, 17, Bleicher Dep. 26:10-27:4, 27:21-24, 62:8-16).

It is here where the court erred factually in its previous memorandum, wherein it stated, "Bleicher . . . *informed Plaintiff that the PEA had been terminated.*" (Doc. 55 at 21) (emphasis added); (see also Doc. 55 at 10).  Upon reconsideration, the court finds no admissible evidence of record showing that Dr. Bleicher informed Plaintiff that his 2013 PEA was terminated, let alone for cause.  Dr. Bleicher's sworn deposition testimony is quite clear in this regard.  Any contrary testimony by Attorney DeLorenzo—insofar as it relates to Dr. Bleicher's statements during the meeting—is inadmissible hearsay, and thus not competent evidence to oppose a motion for summary judgment.  See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1246 (3d Cir. 1993) (affirming district court's finding that inadmissible hearsay evidence, which could not be "reduced to admissible form at trial," was incompetent and thus unable to be considered to defeat a motion for summary judgment); FED. R. CIV. P. 56(c)(2) ("A party may object that the material cited to . . . dispute a fact cannot be presented in a form that would be admissible in evidence.").  This erroneous conclusion was critical to the court's previous partial denial of summary judgment, because it tended to show that some agent of PHS had exercised discretion to terminate Plaintiff, possibly for cause under the 2013 PEA.

Once the above-referenced erroneous facts and DeLorenzo's hearsay statements are stripped away, it becomes clear that Defendants have not met their burden to oppose summary judgment.  Defendants have failed to point to any evidence that can be reduced to an admissible form at trial that would rebut Plaintiff's breach of contract claim regarding the circumstances of his termination.  In other words, Defendants have not

identified any portion of the extensive record from which a reasonable jury could infer, at trial, that PHS exercised its discretion to terminate Plaintiff for cause. Although Defendants point to evidence showing that Plaintiff knew he was terminated, and that Plaintiff did miss a day of work (which could hypothetically constitute for-cause termination grounds), this is simply not enough at the summary judgment stage. See Acumed LLC, 561 F.3d at 228 ("speculation and conjecture may not defeat a motion for summary judgment").

Defendants, therefore, have not carried their burden to oppose summary judgment, as they cannot demonstrate that a triable issue of material fact exists concerning Plaintiff's termination without notice and without severance pay. Consequently, summary judgment must be granted in Plaintiff's favor on this remaining portion of his breach of contract claim.

### b. Wage Payment and Collection Law Claim

Furthermore, because there is no genuine dispute of material fact that Plaintiff's termination breached the 2013 PEA, it follows that summary judgment is also appropriate on Plaintiff's claim under the Wage Payment and Collection Law ("WPCL"), 43 PA. STAT. AND CONS. STAT. ANN. §§ 260.1-260.45. Accordingly, the court finds as a matter of law that when Defendants terminated Plaintiff—without doing so "for cause" under paragraph 14(c), and without giving the required 180 days' prior written notice under paragraph 14(d) for unilateral "without cause" termination—Defendants violated the WPCL when they failed to pay the severance compensation as outlined in paragraph 14(d) of the 2013 PEA.

The WPCL "provides a statutory remedy when [an] employer breaches a contractual obligation to pay earned wages." De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003) (quoting Antol v. Esposto, 100 F.3d 1111, 1117 (3d Cir. 1996)). Severance pay obligations in an employment contract fall under the WPCL's definition of "wages." See 43 PA. STAT. AND CONS. STAT. ANN. § 260.2a (defining "Fringe benefits or wage supplements" as including "separation" pay); see also Shaer v. Orthopaedic Surgeons of Cent. Pa., Ltd., 938 A.2d 457, 465 (Pa. Super. Ct. 2007); Bowers v. NETI Tech., Inc., 690 F. Supp. 349, 353 (E.D. Pa. 1988).

Under paragraph 14(d) of the 2013 PEA, a "without cause" termination by either party is permissible so long as 180-days' written notice is provided to the party not pursuing termination. (Doc. 38-3 at 5). This paragraph also allows PHS to end a physician's services during the notice period, "provided that Physician shall be entitled to the continuation of compensation and benefits during such notice period." (Id.) Therefore, if PHS terminates a physician without cause and then ends his services sometime before the expiration of the 180-days' notice period, the physician is due compensation and benefits for the portion of the notice period still remaining at the time his services are ended. If, however, PHS terminates a physician without cause, provides no notice, and also ends the physician's services immediately, it follows that such a termination would require a severance payment of the entire 180-days' compensation and benefits.

Because Plaintiff was not terminated under paragraph 14(a) or (b), nor for cause under paragraph 14(c), his termination can only have been without cause under paragraph 14(d). It is undisputed that no notice was given to Plaintiff, and that he was not paid any compensation or benefits after his termination. Consequently, Defendants

19

violated the WPCL when they failed to pay the severance obligations that were due upon Plaintiff's termination as required by paragraph 14(d) of the 2013 PEA.

*IV.        Conclusion*

For all of the foregoing reasons, the court will deny Defendants' motion for reconsideration (Doc. 57) and grant Plaintiff's motion for reconsideration (Doc. 59). The court will vacate its previous order (Doc. 54) that granted in part and denied in part Plaintiff's motion for summary judgment. Furthermore, the court will grant Plaintiff's motion for summary judgment (Doc. 35) in full.

Thus, the court holds as a matter of law that (1) Defendants breached the 2013 Physician Employment Agreement by suspending Plaintiff without pay and by terminating Plaintiff without cause and without making the contractually required severance payments; and (2) Defendants violated Pennsylvania's Wage Payment and Compensation Law by failing to pay Plaintiff the severance due upon termination as required by the 2013 employment contract. Trial will be held on the issue of damages only. An appropriate order will follow.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge